**ANN E. ABRAMSON, Plaintiff**

v.

**LUTHER BENJAMIN, Defendant & Third Party Plaintiff**

v.

**LOUIS P. HESTRES and 40 SUB–BASE CORP., Third Party Defendants**

Civil No. 75-121

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

August 2, 1977

VICTOR G. SCHNEIDER, ESQ., St. Thomas, V.I., *for plaintiff*

LOUD & CAMPBELL (FREDERICK G. WATTS, ESQ.), St. Thomas, V.I., *for defendant/third party plaintiff*

LOUIS P. HESTRES and No. 40 SUB-BASE CORP., St. Thomas, V.I., *pro se*

HODGE, *Judge*

### MEMORANDUM OPINION

In this action for debt, judgment was rendered by the former Municipal Court (now Territorial Court) in favor of plaintiff on September 11, 1975. This judgment was

appealed to the United States District Court, Division of St. Thomas and St. John, which conditionally affirmed the decision on December 14, 1976. The affirmance was conditioned upon "the finding of the trial court as to whether or not plaintiff continued her tenancy during the months in question." Whether further proceedings would be necessary to make such a finding was left to the discretion of the trial court by the following language in the judgment of the District Court:

IT IS ORDERED, ADJUDGED AND DECREED that the judgment of the Municipal Court is hereby affirmed, *subject to further proceedings if necessary* to conform to the Memorandum of this Court. (Emphasis added.)

Since the date of the original judgment of the Municipal Court the judge who presided at the trial has retired and the attorney who represented the third-party defendant is now an associate judge of the Territorial Court. In view of these circumstances and the need to expedite a final resolution of this long-pending action, I scheduled an informal hearing which was held on July 11, 1977, with all parties being represented.

## I.

At that hearing counsel for plaintiff and third-party defendants (Hestres), pro se, both argued that the finding required by the District Court could be made from a review of the entire record. On the other hand, counsel for defendant/third-party plaintiff (Benjamin) argued that a hearing de novo on that issue was required. Accordingly, all parties were given until July 26, 1977, to submit whatever documentation they deemed appropriate in support of their respective positions.

After a detailed review of the transcript, exhibits, and the entire record, and after consideration of the various arguments and documentation of the parties, I conclude

that the required finding can be made without a hearing de novo on this issue. Counsel for Benjamin emphasizes the need ". . . to resolve the issues of credibility of the various witnesses or a new trial in toto is called for." I disagree. In this case, there is no conflicting testimony between the parties as to the finding in question; thus, credibility is not in issue. My review convinces me that the vagueness or doubt which exists as to whether plaintiff continued her tenancy during the months in question results not from any contrary testimony by Benjamin, but from Hestres' counterclaim and from certain language used during his testimony. Since I find that this vagueness can be satisfactorily clarified by the entire record, as explained below, no hearing de novo nor "in toto" will be necessary.

## II.

In determining whether plaintiff continued her tenancy of the premises from August 1, 1974, to November 8, 1974, I have carefully considered the various portions of the record which relate to this issue. My analysis reveals that both the plaintiff and Hestres considered the lease to be in full force and effect, and their conduct reflected their understanding that plaintiff's tenancy continued throughout the months in question. Thus, consistent with Paragraph 2 of the lease which provided for a lease term of 5 years (Plaintiff's Exhibit No. 1), plaintiff was billed for the rental for the period in question (Plaintiff's Exhibit No. 4). Moreover, plaintiff paid and was credited for the rental for these months by Hestres. Indeed, plaintiff's account was credited for the one payment made by Benjamin thereby reflecting the continuing validity of her tenancy.

Doubt has been created as to plaintiff's tenancy during the months in question because of the counterclaim filed by Hestres against Benjamin. In his counterclaim Hestres alleges that the rental in question is owed to him by

Benjamin, thus implying that none was owed by Plaintiff. I view this counterclaim as merely an alternative legal strategy to protect Hestres' rental claim, and therefore give it little weight in deciding whether plaintiff's tenancy was continuing. Having been involuntarily brought into the case, Hestres' counterclaim was necessary to insure that Benjamin would pay the required rental either to the plaintiff or to Hestres, in which event the plaintiff would be appropriately credited as was done with the one payment made by Benjamin to Hestres. It appears, however, that Benjamin envisioned the ironic result in which he would be found to owe the rental in question, but would be relieved of paying it to the plaintiff because she had not continued her tenancy, and also be relieved of paying it to Hestres because he did not prevail on his counterclaim. The initial filing of the counterclaim against Benjamin to avoid such an injustice cannot now be used to question the validity of plaintiff's tenancy. Moreover, implicit in the trial judge's decision in favor of plaintiff is the indication that the plaintiff was in fact in continued tenancy, otherwise judgment would have been rendered in favor of Hestres on his counterclaim. Manifestly, the defendant cannot have it both ways.

Doubt has also been created as to plaintiff's tenancy during the months in question because of a portion of the testimony of Hestres in which he admitted telling Benjamin that plaintiff stopped paying rent on the premises. However, it is obvious that a mere failure to pay rent cannot, per se, constitute a discontinuation of tenancy, especially where the conduct and the understanding of the parties are to the contrary as shown in the record. An examination of the transcript reveals the following testimony during the direct examination of Hestres by counsel for plaintiff:

Q. Mr. Hestres, at the time that you received this check from Mr. Benjamin in the amount of $1,600.00, what was the understanding

between you and Mr. Benjamin regarding the rent, if any understanding—

A. Well, the only understanding that I had was that I told Mr. Benjamin that I am holding Mrs. Abramson responsible for the rent.

THE COURT: You told who?

THE WITNESS: I told Mr. Benjamin.

THE COURT: Yes?

THE WITNESS: At that time I told Mr. Benjamin that I was holding Mrs. Abramson responsible for the rent.

THE COURT: Was this September 27th you are talking about?

THE WITNESS: September 27th, yes.

THE COURT: Okay. Go ahead.

THE WITNESS: And the reason why I said that was because I knew that Mrs. Abramson had made certain demands of Mr. Benjamin for rent for the time that he was in there, and she had indicated to me that she wanted to keep the place. She was interested in putting the business in there, and the lease was still good. (Tr. at 24–25.)

In addition to Hestres' direct testimony, the plaintiff's own testimony indicated that she never even attempted at any time to abrogate the lease. During plaintiff's direct examination by counsel, the following exchange regarding Benjamin occurred:

Q. Do you remember what day that was that you called him?

A. That was some time early in August, and I told him, I said, "Man, you are messing me up." He said, "I am coming to St. Croix, and I am going to see you." He was coming over for a board meeting for Labor, for some Labor hearing that he was involved with, and I said, "I will pick you up and we will talk because I really need to get into the place." Well, he came over and we talked.

Q. Do you remember about what date he came over?

A. I would say, sir, around the early part of August, and the meeting centered more around some stuff that I told him I would sell him for a job that he was doing on a building on St. Thomas, and I had materials that I think he could use, and he came and he looked at them. He told me what he needed and so forth, and at that time he also indicated that he was going to be out by the end of the month. One of my employees—

THE COURT: The end of what month?

THE WITNESS: The end of August, around the end of the month.

THE COURT: Wait a minute. You talked mostly about what he was going to buy, but then he indicated what? What did he indicate about when he was going to be out, if that subject came up?

THE WITNESS: He didn't indicate. I said I observed that he was not getting out.

THE COURT: You observed that he was not out of there by the end of the month?

THE WITNESS: Yes.

THE COURT: Then, what did you do?

THE WITNESS: Then, I directed Mr. Elcock, who was managing that branch of that company for me that I was going to establish over here, I told him to write to Mr. Benjamin and let's go on the record to him, because apparently he thinks we are joking, and to let him know that we have rent accumulating on the premises where he is occupying. Within the time I spoke to him and the time the letter was written to him, I had made several attempts to call him on his job, and I never could get a reply. So I said, well then, I am going to write to him. (Tr. at 120–122.)

Consistent with the above, plaintiff's testimony during cross-examination by counsel for Benjamin shows that her actual occupancy always seemed to be imminent, based on direct promises from Benjamin, as indicated by the following:

Q. Can you tell us what efforts at all you made to mitigate your damages here?

A. The effort that I made was a considerable attempt at various occasions to try and get the facilities that I rented.

Q. I understand, but there came a time that you felt, at least in your own mind, that you were having great difficulty and that Mr. Benjamin wasn't going to be out very soon, is that right?

A. No. There didn't come that time.

Q. There did not come that time?

A. He was always getting out just about immediately. (Tr. at 134.)

The foregoing testimony of Hestres and of the plaintiff herself; her direct claim for rental for the period in

question; her subsequent filing of the instant action; and her operation of the business on the leased premises after Benjamin finally vacated, all clearly establish the continuation of the tenancy and plaintiff's continuing obligation to pay rent to Hestres.

### III.

In view of the foregoing and my review of the entire record I find that plaintiff continued her tenancy of the premises in question during and beyond the period August 1, 1974, to November 8, 1974.

Accordingly, plaintiff is entitled to judgment against Benjamin, consistent with the December 14, 1976, order of the District Court.